UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
ERICA PASSARELLA,

Plaintiff,

                                                   **25 cv 3507**

-against-                                  **<u>AMENDED COMPLAINT</u>**
                                           *Jury Trial Demanded*

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,
MELISSA AVILES-RAMOS,
KATHERINE RODI,

Defendants.
-----------------------------------------------------------------------------X

Plaintiff, ERICA PASSARELLA ("Erica"), by and through her counsel, Sobel Law Offices, P.C., as and for her Amended Complaint against Defendants, the NYC Department of Education, Melissa Aviles-Ramos, its Chancellor, and Katherine Rodi, its Director of Employee Relations, jointly (the "Defendants"), hereby alleges as follows, upon information and belief:

<b><u>PARTIES</u></b>

1. Erica is a natural person, residing in the county of Queens, in the City of New York, and was an employee for the Department of Education of the City of New York ("NYCDOE") in good standing as a teacher since 2011.

2. Erica was a public employee of Defendants within the meaning of an "employee" as defined in New York State Civil Service Law§ 75- b(l)(b), NYC Human Rights Law, New York State Human Rights Law, New York Labor Law, Fair Labor and Standards Act, and a covered person under Citywide Administrative Services and Education Law §§3020 and 3020-a.

1

3. The NYC DOE manages the public school system of the entire City of New York, covering all five (5) boroughs of NYC and is a recipient of substantial federal funds. The NYCDOE maintains offices at 65 Court Street in Brooklyn, NY 11201.

4. The NYC DOE is run by the NYC Schools Chancellor, defendants Melissa-Aviles Ramos ("Ramos"). Ramos has a responsibility to oversee and manage the NYC system of public schools located throughout all five (5) boroughs of the City of New York.

5. The executive agency counsel for the NYCDOE is Katherine Rodi ("Rodi"). Rodi is employed by the NYCDOE and has the responsibility of overseeing the NYCDOE's Office of Safety and Health, and the Office of Personnel Investigations where she decides who among the NYCDOE's employees are placed on a "Problem Code". She monitors the disciplinary information in the personnel file that is highlighted by the Problem Code for principals who may want to hire a former or current employee.

6. Both Ramos and Rodi are named Defendants in this Complaint as they each jointly and severally possessed, at all relevant times and do still possess now, sufficient authority to affect personnel decisions, and are individually liable for acts of discrimination.

7. At all relevant times, the Defendants have jointly and severally overseen the NYC system of public schools located throughout all five (5) boroughs of NYC.

8. NYCDOE is a state actor who, at all times, was acting under the color of state law.

## **JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for

federal questions under 42 U.S.C. 1983, in particular the protections given by the Fourteenth Amendment, as well as the enforcement of the Americans of Disabilities Act.

10. This Court has supplemental jurisdiction pursuant New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"), New York Executive Law §296 and Administrative Code §8-107, in that such claims are so related to Erica's claims within the original jurisdiction of this Court that they form part of the same case or controversy. Defendants were at all times acting under color of law in breaching their covenant of goodwill and fair dealing with Erica as well as committing fraud in the inducement.

11. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the NYCDOE is located at 65 Court Street in Brooklyn N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

12. Defendants were at all times acting under color of law.

## NATURE OF ACTION AND STATEMENT OF PERTINENT FACTS

13. This is a civil action, wherein Erica is seeking injunctive relief, monetary relief, including past and on-going economic loss, compensatory and punitive damages for violations of Constitutionally protected rights given to her as a tenured teacher pursuant to 42 U.S.C. § 1983, Stigma Plus (due to placement of a flag, a "problem code", upon Erica's fingerprints), Fourteenth Amendment to the United States Constitution, Education Law §§3020 and 3020-a, 42 USC 1988, Fraud in the

3

Inducement; NYSHRL, NYCHRL, Executive Law §296(1), Americans with Disabilities Act, and those parts of the New York State Constitution which similarly apply with like language and together with this Court's pendent jurisdiction over causes of action arising under New York State laws, both common and statutory; and other State and Federal laws governing employment.

14. Erica has been deprived of her constitutional rights to due process, with the intent and for the purpose of depriving her of property and liberty rights.

15. NYCDOE implemented the Covid Vaccine Mandate ("CVM") without any statutory or contractual authority to do so. As a result, Erica was unable to comply and take a vaccine, was suspended without pay and without due process.

16. Erica was deprived of her Constitutional rights in the lawless implementation of the CVM in the City of New York by the Defendants acting under color of law.

17. Erica was charged with misconduct, flagged with a problem code in her personnel file, but deprived of her statutory and contractual constitutional rights to the unique due process hearing allowed for tenured teachers, through an arbitration called §3020-a based upon Education Law 3020 and 3020-a.

18. Beyond cavil, no tenured employee of the Defendants can be terminated without a hearing except if he/she is convicted of a sex offense or some other felony offense. (Section 3020-a (l)(d); Article 21 G, UFT Collective Bargaining Agreement "CBA").

19. Erica had an impeccable reputation and record. While a tenured teacher, she had Constitutional rights, including protected liberty and property rights. Once the covid pandemic, and subsequent covid vaccine mandate rolled out, infra, Erica

4

applied for a medical exemption. She completed her required administrative remedies to obtain a medical exemption and a §3020-a hearing but was denied both, after being charged with misconduct.

20. Defendants placed a problem code on Erica's file on or about October 3, 2021 which charged her with misconduct; however, she never was given her mandated §3020-a arbitration hearing on such charge(s).

21. The NYCDOE further directed Erica to not apply for unemployment benefits and/or working any other jobs.

22. Erica has never been previously named in any Court with a cause of action for the on-going stigma and damage done by the lawless process detailed here, created by the placement of a flag on her files known as the "Problem Code", a discipline code. This flag is a disciplinary code that permanently blocks Erica from getting a job with the NYCDOE and to be paid to do her job, which was Constitutionally protected by the rules of tenure and Education Law §3020 - which gave Erica the right to a due process hearing called "§3020-a arbitration" before she had any reduction in salary and/or was terminated.

23. Moreover, the Problem Code designation has been knowingly and intentionally published in the computerized system maintained by the Defendants, with open and unfettered access to this defamatory and damaging label for other education professionals, such as those making hiring decisions, without giving Erica the right and opportunity to challenge it, and with full knowledge by Defendants that such Problem Code was not warranted or substantiated by any actions and/or possible alleged omissions of Erica.

24. The Problem Code designation opened Erica up to ridicule, professional stigma, and actual financial and reputation damages, stemming from her being unable to obtain new employment.

25. Defendants, under color of law, ignored this law because it was not convenient, and thus deprived Erica of her property right of employment without due process, namely going through an arbitration process.

26. Erica's terms of employment – spelled out clearly in the §3020 statute and the Union contract, CBA, of the United Federation of Teachers – were never changed, and the Leave Without Pay that removed her from her job was a false, invalid name for the punishment of suspension without pay.

27. Defendants engaged in medical discrimination against Erica, by implementing CVM and breached the obligations set forth in the ADA by refusing to provide her with the limited accommodation sought by her for her health condition, endangering her health by requiring her to obtain the covid vaccines mandated by the Defendants.

28. Erica, pursuant to the directives of Defendants, duly completed all forms and provided requested evidence to Defendants, and still Erica received no justification for her being denied her appeal for accommodation despite such completion, in direct violation of her First Amendment rights.

29. Erica's demands for relief include recovery of monetary damages in backpay above $400,000; full reinstatement to her prior title and position with all raises, steps and benefits; restoration of the ability to search and obtain other jobs within the NYCDOE system and her name and personal data removed from the Office of

Personnel Investigations' ("OPI") database.

30. On October 2, 2021, Erica applied for a Medical Accommodation/Exemption to the CVM on the NYCDOE/SOLAS website. With her application she attached the required medical documentation.

31. Erica received an email from the NYCDOE SOLAS confirming their receipt of her application for a Medical Accommodation/Exemption. Erica does not have independent recollection of the assigned case number and she has been locked out of the Solas system by Defendants and denied access to her own records.

32. NYCDOE initially denied the request for the Medical accommodation and/or exemption, claiming insufficient evidence of need for the exemption, but did so without requesting any additional medical information either from the medical provider that issued the note advising Erica against the administration of the covid vaccine or from Erica directly.

33. Most notably, Defendants neither ever directly requested such documentation from Erica nor requested that she provide Defendants with an executed HIPPA form for Defendants to be able to request such documentation directly from Erica's physician.

34. On or around October 3, 2021, Erica was placed on Leave Without Pay while her medical case was pending determination.

35. Erica was not allowed to appeal her initial medical exemption determination. At this time, only denials of religious exemptions were subject to appeal, in direct violation of Erica's First Amendment rights.

36. Accordingly, on or about October 13, 2021, Erica again submitted her request for a medical exemption from the CVM. Despite the defendants' false claims of doing an

"extensive check" of Erica's application, this second application was also denied, but without any official written notice to Erica.

37. Erica was never informed that her second application for a medical exemption was closed; there was merely a notation in Solas that the NYCDOE did not have sufficient information to evaluate the accommodation request. And yet again, no direct communication was made by Defendants to the medical provider, or to Erica, to seek substantiation – or even identifying what kind of substantiation was purportedly needed by the Defendants – to further evaluate the requested medical exemption or accommodation. And yet again, Erica was denied the right or opportunity to appeal the uncommunicated denial of her application for accommodation, in direct violation of her First Amendment rights.

38. On or about March 21, 2022, Erica filed a complaint and claim with the Equal Employment Opportunity Commission ("EEOC"). After nearly three (3) years of investigations, on or about March 23, 2025, the EEOC provided Erica with a right to sue letter. This lawsuit ensued. 10/2/21 and 10/13/21 put in applications for medical exemption – denied on the same day – never did "extensive check" – unlike stated in letter to EEOC 12/22/23

39. On or about August 24, 2022, Erica received a letter from the NYCDOE, dated August 22, 2022, informing her that she will be reinstated if she complied with the CVM by October 21, 2022 ("Reinstatement Letter"). Erica justifiably relied upon the offer contained in the Reinstatement Letter, accepted the offer and, despite the danger to her health, and subsequent actual adverse health effects – Erica suffered ill effects

such as, *inter alia*, a full blown case of Covid – by October 11, 2022, had fully complied with the Reinstatement Letter demands. To wit, Erica had obtained her first dose of the vaccine on September 20, 2022 and second dose on October 11, 2022.

40.    Erica notified NYCDOE of her compliance with the Restatement Letter on September 20, 2022, October 11, 2022 and again on November 15, 2022. Despite providing such proof, the Defendants breached the contract set forth in the Reinstatement Letter and failed and refused to reinstate Erica into the position she held prior to her termination.

41.    This breach of contract continues and is ongoing, as Erica continues to apply for positions with the DOE and is repeatedly either ignored and/or rejected, despite the Reinstatement Letter and Erica's compliance with the conditions thereof.

42.    From on or about October 3, 2021, to February 2023, when the CVM was withdrawn and Erica was told she could again return to work, she remained without pay. Even after Erica complied with the Reinstatement Letter, she remained without a job and without pay. During this time she was not paid her salary, nor did she receive her benefits and pay raises. Defendants gave her no reason for their neglect of her rights.

43.    On or about February 14, 2023, Erica became aware that her fingerprints had been tagged in the NYCDOE's 'Problem Code' at the Human Resources' Office of Personnel Investigations, but was never told why. These fingerprints were sent to the FBI without consent of Erica or even her being given the information that such action was being taken and any opportunity to challenge this undue interference with her ability to work and earn a living.

44.    The 'Problem Code' is used for employees who have committed what the NYCDOE considers misconduct. Therefore, without informing her of same, the NYCDOE has

considered Erica guilty of some kind of misconduct without giving her a chance to clear her name and have a hearing on the matter before putting her fingerprints into a Problem Code database.

45.    As the "Problem Code" remains of Erica's file, it is an ongoing bar to her employment. As Erica was never officially informed of the placement of this Problem Code on her record by the defendants, she has had no opportunity to file a claim against the defendants. Beyond cavil, it is impossible to file a claim against defendants without an official notice of action therefrom.

46.    Defendants continue to deny Erica's rights but in such manner that precludes her ability to request redress for same, in violation of her rights under the First Amendment.

47.    On or about February 2023, Erica was advised that she can now apply for jobs through the DOE portal, but only as a new teacher, losing her tenured teacher status. Erica, despite applying for numerous positions and attending interviews, has been unable to secure a new teaching position.

48.    Erica has maintained all of her teaching credentials up to date and current since being unlawfully and unjustifiably terminated by the NYCDOE.

49.    Furthermore, on or around February 28, 2025, when Erica was trying to submit applications for a job for the upcoming academic year, for some unknown reason, the NYCDOE, continuing their unlawful and retaliatory actions, delayed Erica's access to the portal until late March 2025, for an unspecified review of her credentials, which she never been subjected to in any of the prior years.

50.    On several occasions Erica inquired as to the reason for not getting the position

applied for, and was given a number of odd answers, including that the position was no longer being sought. However, upon later review, the same exact position was again posted by the NYCDOE as needing to be filled.

51. Upon information and belief, in addition to the Problem Code being placed on her file, Erica is being discriminated against due to her age being over 40. In fact, in September 2021, when Defendants presented Erica with two (2) possible agreements to stay on leave without pay – (1) resign by October 27, 2021 and receive 75 days paid leave and medical coverage until September 5, 2022, or (2) chose to stay on leave without pay until September 2, 2022 and kept medical coverage – one of the main demands by Defendants was the written waiver by Erica of the right to pursue any age discrimination claims. This was not a requirement of those employees that were under the age of 40 years old.

52. Furthermore, Erica is likewise being retaliated against by the NYCDOE due to her initial refusal to comply with the CVM.

53. Defendants ignored the Equal Protection Clause of the 14th Amendment in creating a different due process for NYCDOE employees such as Erica, than that applicable to other employees similarly situated with tenure in New York State but outside of New York City. Outside of New York City tenured teachers have the right to a §3020-a hearing if charged with insubordination/misconduct. That hearing process under a neutral arbitrator is the only authority to hear and evaluate evidence, witness testimony, and determine the legitimacy of a teacher's reasons for remaining unvaccinated.

54. It must be noted, at the outset, that the UFT CBA, governing procedure for

tenured teachers employed by the NYCDOE, was never altered to require proof of vaccinations and there are no provisions allowing any orders from any other entity to effect the same.

55. In addition to actual physical trauma, Erica suffered extreme emotional trauma knowing that she would have to choose between her health and her job.

56. Employment Law and the teacher's CBA says that leaves are voluntary. In Erica's case, however, the leave was involuntary and in violation of the procedures in place under the UFT CBA and applicable State and Federal Laws, *supra and infra*.

57. For completeness of reference, Rodi is the executive director of the Office of Personnel Investigations, ("OPI"), which punitively blocked Erica from ever getting a job in the NYC public schools by creating a data file on her that has damaging information about misdeeds that may or may not be true. Also, OPI keeps all information about the problem code secret, especially from the employee whose file has the Code on it.

58. Erica was never told about the Problem Code being placed on her file until she heard of the issue in a news report. Nor was she ever told of the reason for such Problem Code to be placed on her file, since she was never granted her right to a 3020 hearing.

59. To date, Erica has been unable to obtain any information to explain how she were problem coded, how she may get the Code removed, and what process she can use to clear her name.

60. The Defendants, jointly and severally, and intentionally precluded Erica from

being able to pursue any remedies, file any notices of claim, or proceedings, until the filing of the instant lawsuit, by failing and refusing to provide her with any written official communications, relating to any of the Defendants' respective determinations, decisions, official actions, and/or administrative determinations, final and binding or otherwise.

61. Due solely to the actions of Defendants, Erica has been unable to secure a steady job, lost her medical insurance, had to apply for public support programs, and is at risk of losing her home.

### AS AND FOR A FIRST CAUSE OF ACTION
### VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

62. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth hereinabove in paragraphs 1 through 61 with the same force and effect as if fully set forth herein.

63. The First Amendment of the US Constitution creates a private right for an individual to petition the Government for a redress of grievances.

64. Where, as here, Defendants, jointly and severally, have failed and refused to allow Erica to appeal unilateral, unsubstantiated and arbitrary decisions, they have jointly and severally deprived her of her rights under the First Amendment of the US Constitution to seek redress.

65. Likewise, by failing to issue official written determinations and notices of actions taken against Erica, and instead choosing to label, besmirch, libel and defame Erica via internal file notations, Defendants again jointly and severally, with clear knowledge and intent, deprived (and continue to deprive) Erica of the right to

challenge such unilateral determinations and, *inter alia*, her rights under the First Amendment to the US Constitution.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF THE NYS CONSTITUTION

66.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth hereinabove in paragraphs 1 through 65 with the same force and effect as if fully set forth herein.

67.    Article 1, Section 9, of the Constitution of the State of New York creates a private right for an individual to petition the Government for a redress of grievances.

68.    Where, as here, Defendants, jointly and severally, have failed and refused to allow Erica to appeal unilateral, unsubstantiated and arbitrary decisions, they have jointly and severally deprived her of her rights under the Constitution of New York State to seek redress.

69.    Likewise, by failing to issue official written determinations and notices of actions taken against Erica, and instead choosing to label, besmirch, libel and defame Erica via internal file notations, Defendants again jointly and severally, with clear knowledge and intent, deprived (and continue to deprive) Erica of the right to challenge such unilateral determinations and, *inter alia*, her rights under the Constitution of New York State.

## AS AND FOR A THIRD CAUSE OF ACTION
## VIOLATION OF EQUAL PROTECTION

70.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth hereinabove in paragraphs 1 through 69 with the same force and effect as if fully set forth herein.

71.   Defendants, while acting under the color of law, unlawfully deprived Erica of her right to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against her based upon, *inter alia*, Erica's medical exemption and constitutionally protected conduct.

72.   In so doing, Defendants intentionally and, with malicious or bad faith intent to injure Erica, selectively treated her differently from other similarly situated employees and acted with no rational basis for the difference in treatment by exempting certain classes of individuals such as entertainers, private sector employees and other from the vaccine requirements. Defendants' conduct was intentional, conducted with bad faith, wholly irrational and arbitrary, and to Erica's detriment.

73.   As a direct result of Defendants' violation of Erica's Fourteenth Amendment rights of equal protection, she has suffered irreparable harm for which there is no adequate remedy of law.

74.   Due solely to Defendants' violation of Erica's Fourteenth Amendment rights of equal protection under the law, as alleged herein above, Erica has suffered and is entitled to a declaratory judgment reinstating her to her previously held position and to recover compensatory and nominal damages, in an amount to be determined at trial but not less that $3,000,000, plus costs and attorneys' fees.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF 42 USC §1983**

75.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth hereinabove in paragraphs 1 through 74 with the same force and effect as if fully set forth herein.

76. Defendant is a state actor who, at all times, was acting under the color of state law.

77. The NYCDOE implemented the CVM without any statutory or contractual authority to do so. As a result, Erica was unable to comply and take a vaccine, was suspended without pay and without due process.

78. The NYCDOE paid Arbitrator Martin Sheinman who created the unconstitutional Leave Without Pay that resulted in Erica being fired without pay and without due process. The Award he issued in September 2021 made the false claim that LWOP, a forced suspension without pay, was "not disciplinary". This determination is knowingly and patently was false, as a forced suspension without pay is punishment for misconduct. The placement of the Problem Code on Erica's personnel file without giving any reason is prima facie proof that Erica had been found guilty of insubordination/misconduct without due process, and yet without an official written determination or order that could have been appealed.

79. Education Law Section 3020, Chapter 16, Title 4, Article 61 states as follows: "Discipline of teachers. 1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article" and "2. No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of the public health law….. (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision…"

80. Erica did not, at any time, waive her rights to a 3020-a hearing on her medical exemption request.

81. Nonetheless, Erica was declared insubordinate by the NYCDOE, her personnel file was flagged and her fingerprints tagged with a with a "Problem Code" designating misconduct and has created a stigma plus because it impugns her professional and personal reputation and directly impacts her ability to secure employment in New York City.

82. Furthermore, a waiver of a teacher's tenure rights must be knowingly and freely given. Erica at no time ever waived any such rights. Moreover, no opportunity to appeal or file a claim based on such un-waived taking of rights has been given to Erica due to lack of official written communication and/or determinations by Defendants.

83. Defendants failed to provide Erica with due process pursuant to the 14th Amendment of the United States Constitution and deprived her of constitutional rights given to her as part of her tenure status.

84. Due solely to Defendants' violations, as alleged herein above, Erica has suffered and is entitled to a declaratory judgment reinstating her to her previously held position and to recover compensatory and nominal damages, in an amount to be determined at trial but not less that $3,000,000, plus costs and attorneys' fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FIFTH AMENDMENT TAKINGS CLAUSE

85. Erica repeats, reiterates, and re-alleges each and every allegation set forth hereinabove in paragraphs 1 through 84 as if the same were fully set forth herein.

86. As a result of the Defendants' actions as set forth above, Erica has been, and continues to be, deprived of her applicable Federal and State rights, applying the First, Fifth and Fourteenth Amendments' rights of the U.S. Constitution.

87. Erica is a tenured educator and as such has property rights to her employment, which should be constitutionally protected under the public policy Tenure Law.

88. Where, as here, Erica has affirmatively established that she has been denied just compensation, which is prohibited by the Takings Clause, without a legitimate purpose, it is clear that Defendants deliberately denied her property interests by firing her and placing her on the Problem Code so that she could not work anywhere, such actions by Defendants constitute unjustified retaliation and discrimination.

89. Defendants have deprived Erica of her rights under color of State Law and unlawfully discriminated against her as to the terms, conditions and privileges of employment, in that Defendants did not allow Erica an accommodation based on her medical complications, which caused her to be terminated unlawfully.

90. Furthermore; Defendants refused to honor Erica's right to a 3020-a hearing under Education Law §§3020 and 3020-a.

91. Due solely to Defendants' violations, as alleged herein above, Erica has suffered and is entitled to a declaratory judgment reinstating her to her previously held position and to recover compensatory and nominal damages, in an amount to be determined at trial but not less than $3,000,000, plus costs and attorneys' fees.

## AS AND FOR A SIXTH CAUSE OF ACTION: VIOLATION OF EQUAL PROTECTION and AMERICANS WITH DISABILITIES ACT

92. Plaintiffs repeat, reiterate, and reallege each and every allegation contained hereinabove in paragraphs 1 through 91 as if the same were fully set forth herein.

93. Erica was entitled to protection and an accommodation under the Americans with

Disabilities Act ("ADA").

94. Erica engaged in a protected activity of requesting an accommodation and complied with all of Defendants' pertinent and required processes to obtain such an accommodation based on her medical condition.

95. Instead of providing her with an accommodation, the Defendants denied the request based on lack of sufficient evidence, but without requesting any such evidence or conducting any investigation, and thereafter retaliated against her by putting a notation of a Problem Code on her File and firing her.

96. Defendants clearly knew Erica was engaged in a protected activity and still took an adverse course of action against her, causing damages to Erica.

97. Beyond cavil, were it not for Erica requesting a medical accommodation, Defendants would not have retaliated against her and would not have placed a Problem Code on her file and fired her.

98. Defendants have no legitimate, non-pretextual, non-retaliatory reason for their decisions and actions against Erica.

99. Bodily integrity is defined by the Courts as the right of a competent person to refuse forced medical treatment that conflicts with individual conditions and could cause harm or death. Erica's medical history lead her medical provider to believe that a covid vaccine would place her in medical danger.

100. In fact, Erica's doctors concerns were well founded – after she was finally coerced and fraudulently induced into getting the covid vaccine, she suffered full blown covid illness for over two (2) weeks.

101. Defendants' conduct was intentional, conducted with bad faith, and wholly

irrational.

102.  Due solely to Defendants' violations, as alleged herein above, Erica has suffered and is entitled to a declaratory judgment reinstating her to her previously held position and to recover compensatory and nominal damages, in an amount to be determined at trial but not less than $3,000,000, plus costs and attorneys' fees.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### FRAUD IN THE INDUCEMENT AND BREACH OF CONTRACT BY FAILURE TO REINSTATE

103.  Erica repeats, reiterates, and realleges each and every allegation contained hereinabove in paragraphs 1 through 102 as if the same were fully set forth herein.

104.  Erica was punished with wrongfully being disciplined for her alleged "insubordination" in not getting the COVID vaccine without any §3020-a hearing and no accommodation offers or review by the Defendants.

105.  Erica earned her tenure, it was not randomly or automatically given to her. Her tenure was supposed to ensure she could not be fired for reasons of race, gender, age, religion, handicapping condition or sexual orientation.

106.  Education Law Section §3020, Chapter 16, Title 4, Article 61 states as follows: "Discipline of teachers (Ex. 1).

1.  No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article;

2.  No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of

20

the public health law..... (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision... "

107. Erica never waived her rights to a §3020-a hearing on her medical exemption and/or accommodation requests. By placing a Problem Code on her file, instead of granting her a hearing to determine her medical accommodation request, Defendants intentionally red flagged her and precluded her from being able to get a job with the NYCDOE or any other employer, event after they offered her full reinstatement if she were to obtain her vaccinations after all. *Infra*.

108. New York State guarantees a tenured teacher's due process rights to continued employment by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement ... " Education Law §3020.

109. Despite due demands therefor, at no time was Erica given a reason for the placement of the Problem Code nor was she given any feedback on how to remove said code.

110. Furthermore, the Defendants informed Erica that she would be reinstated in her previous position if she were to obtain the dubiously required vaccines, despite her fear for her health.

111. Put in an untenable position, Erica did in fact obtain the vaccines, suffered through a

full blown covid illness, and provided proof of the vaccines in a timely and proper manner, as required by Defendants. Erica clearly accepted the bad faith and knowingly fraudulent offer by Defendants, to her own detriment, justifiably relying on the offer, and has continued to suffer damages.

112. Despite such compliance with the requirements of Defendants, Defendants still refused to honor their fraudulently offered contract and failed and refused to reinstate Erica to her previous position and, instead, continued to bar her from being able to obtain **any** position with the NYCDOE.

113. Since Erica has a property and liberty right to her job, when there is any penalty that reduces the benefits of these rights, there must be Just Cause, which is to be determined at a 3020 hearing. Without providing such a hearing, Defendants cannot claim any just cause for their actions against Erica.

114. Defendant simply and without cause or right subjected Erica to discrimination on the basis of her medical condition, unlawfully discriminating against her in violation of all applicable State and Federal Laws and Statutes.

115. Due solely to Defendants' violations, as alleged herein above, Erica has suffered damages and is entitled to a declaratory judgment reinstating her to her previously held position and to recover compensatory and nominal damages, in an amount to be determined at trial but not less than $3,000,000, plus costs and attorneys' fees.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### DEFAMATION, SLANDER, AND LIBEL

116. Erica repeats, reiterates, and realleges each and every allegation contained hereinabove in paragraphs 1 through 115 as if the same were fully set forth herein.

117. The publication of the Problem Code onto Erica's file was clearly of and concerning Erica. By the publication of the Problem Code, the Defendants intentionally disseminated the knowingly false, defamatory statement of the presumed alleged existence of some kind of problem with Erica and her work performance to all educational system professionals, both peers and superiors, educators and administrators, and especially those in positions of power and hiring.

118. The intentionally false and defamatory allegations caused Erica to incur actual professional, financial and reputation injury.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE**, the Plaintiff demands judgement against the Defendant for all compensatory, emotional, psychological and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1. Declaring Plaintiff's due process rights were violated;

2. Awarding Plaintiff all the backpay, steps, raises and any other applicable financial damages that ensued after she was placed on a lawless and unconstitutional Leave Without Pay;

3. Compensatory damages for past and future economic deprivation;

4. An Award of reasonable Attorney fees and litigation costs;

5. Granting such other and further relief that the Court deems just and proper.

Dated: Syosset, New York
December 26, 2025

Respectfully Submitted,

SOBEL LAW OFFICES, PC

/s/ Sv Sobel, SS4424
Svetlana Sobel, Esq.,
*Attorney for Plaintiff*
445 Broadhollow Rd,
Suite 25
Melville, NY 11747
(516) 871-6799